Angelo Reynolds #228386
Wabash Valley Corr. Fac.
6908 S. Old US Hwy 41
Carlisle, IN 47838

Exhibit 'A'

SCANNED at WVCF and Emailed on
4-2-25 by NP - 168 pages.
(date)  (initials) (num)

UNITED STATES DISTRICT COURT
SOUTHERN DIVISION OF INDIANA

Angelo Reynolds,
    Plaintiff,

V.

Bryce Browning;
Everado Angeles-Mora;
John Leffler; Micheal Ellis;
Samuel Byrd; John Hiatt;
Makayla Willis; John Payne;
Jane Tomas; Jane Riggs;
Jane Beadwell; Jane Moody;
Centurion Health; John Gilstrap;
John Fischer; Jane Meeks;
Richard Yarber;
Jane Wadhwan;
Natasha English;
Ashely Moseley;
John Mallot;
John Vonleet;
Frank Vanihel;
John Pickett;
John Dugger;
John Allen;

Case No. 2:25-cv-00168-JPH-MG
Civil Rights Complaint
[42 U.S.C. §1983]

TRIAL BY JURY DEMANDED

FILED
04/02/2025
U.S. DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
Kristine L. Seufert, Clerk

COMES NOW, Angelo Reynolds #228386, Plaintiff pro se, who presents the following Civil Rights Complaint, and claims for declaratory, injunctive, compensatory, and punitive relief as follows:

## I. INTRODUCTION

1. This action places before the court a lawsuit involving Wabash Valley custody officers, Centurion Health Services, and Medical staff employed by Centurion Health Services.

2. This complaint alleges that Plaintiff was retaliated upon by prison officials for filing grievance, that prison officials were deliberately indifferent to Plaintiff's safety and health, that prison official failed to intervene, defamed Plaintiff, harassed and intimidated Plaintiff and used excessive force. Also, that medical personal, needlessly denied Plaintiff adequate medical care and that the warden failed to protect and intervene unconstitutional conduct by prison personal and medical. Causing continuous pain, suffering and injury while defendants conspire and attempt to cover-up their continuous unconstitutional conduct.

## II. PARTIES

1. Angelo Reynolds #228386 ("Plaintiff") is presently serving a criminal sentence in the custody of the Indiana Department of Correction, at all times relevant to this complaint, plaintiff was housed at Wabash Valley Correctional Facility, 6908 S. Old US Hwy 41, Carlisle, IN 47838.

2. The names of the defendants of this complaint are named above, at all times relevant to this complaint the defendants were Wabash Valley custody officers, the Incorporation who employed medical personal, or either the medical personal themselves all employed by the Indiana Department of Corrections at Wabash Valley, 6908 S. US Hwy 41, Carlisle, IN 47838.

3. Each defendant named herein acted under the color of state law while violating Plaintiff's federally protected rights (1st, 8th and 14th Amendment) and showed deliberate indifference, and hereby are being sued in their individual and official capacity, jointly and severally for those acts and omissions described fully below.

## III. JURISDICTION

1. Jurisdiction is asserted pursuant to the United States Constitution and 42 U.S.C. §1983, to redress deprivation of those rights secured by the United States Constitution deprived by a person acting under the color of state law. The court has jurisdiction over these matters pursuant to 28 U.S.C. §§1331, 1345(a)(3).

(1)

2. The United States District Court for the Southern District of Indiana, in the city of Terre Haute, is an adequate venue for trial pursuant to 28 U.S.C. §1391(b)(2): the County of Sullivan is where the events complained of occured.

## IV. Previous Lawsuits

1. Plaintiff has filed two (2) prior civil suit to this one, none are regarding the issues of this described complaint, however it is a direct retaliation to one (1) of the previous complaints filed.

## V. Grievance Procedure

1. Exhibits B-B(5)
2. Exhibits C-C(5)
3. Exhibits D-D(6)
4. Exhibits E-E(6)
5. Exhibits F-F(5)
6. Exhibits G-G(5)
7. Exhibits H-H(2)
8. Exhibits I-I(6)
9. Exhibits J-J(2)
10. Exhibits K-K(5)
11. Exhibits L-L(7)

## II. STATEMENT OF FACTS

1. During August 31st through October 25th of 2024 Plaintiff was housed in Wabash Valley's Secure Control Unit (SCU or SHU) wherein he was subjected to deplorable conditions (contaminated water, delayed/denied medical, mold, mice, birds, sewage and plumbing issues; along with officer misconduct) while locked in his cell nearly 24 hours a day. Plaintiff began to challenge the issues he was experiencing through the grievance procedure and thereafter became a target of the SHU's lieutenant Defendant Lt. Leffler (Exhibits: BC(7)) (Exhibits: B, BC, BC(1), BC(5), BC(4), BC(6)) and caused Plaintiff problems with other officers and inmates after he spread rumors of Plaintiff being a snitch for filing grievances (Exhibits: BC(7), BC(13), BC(14), BC(15)). Defendant Lt. Leffler began to harrass, threaten and intimidate Plaintiff (Exhibits: BC(7)               ). Defendant Lt. Leffler not only spread rumors of Plaintiff being a 'snitch' for filing grievances but also he encouraged officers to harrass, intimidate and threaten Plaintiff, inmates to harm Plaintiff and even encouraged officers to encourage inmates to harm Plaintiff (Exhibits:       ,       ,       ) which lead to Plaintiff getting stabbed which Defendant Lt. Leffler claimed to have taken a part in ( paragraph 6 ) (Exhibits             ). Defendant Lt. Leffler also came into Plaintiff's cell and destroyed legal documents (Exhibit    ).

2. Defendant Frank Vanihel is the warden of Wabash Valley Correctional Facility. After Plaintiff began to notice some of deplorable conditions (mold, contaminated water) he wrote Defendant Frank Vanihel and informed him of those issues and also that he was being refused medical care (Exhibit    ). Once Plaintiff began receiving threats and actions of retaliation for filing grievances pertaining to those issues he again wrote Defendant Frank Vanihel to which he received no response (Exhibit    )

3. Plaintiff was released from the SHU and two days later while returning from his housing unit's med-line (10-25-24) at around/about 10:05am while conversing with an inmate Plaintiff was attacked by two inmates in a suprise attack armed with weapons (Exhibits:          ). Both inmates were unknown to the Plaintiff. One of the unknown inmates punched, grabbed, pushed Plaintiff to the ground while the second unknown inmate swung and hit Plaintiff with a lock multiple times. The first unknown inmate then straddled the Plaintiff armed with a sharp metal object and stabbed the Plaintiff in his face piercing his outter and inner cheek (Exhibits:     ,    ,    ,    ,    )

4. Defendant Officer Bruce Browning was working the north yard (where the incident occured) and was in charge of the med-line movement/supervision. Defendant Browning witnessed the unknown inmates attack Plaintiff yet did not order them to stop, spray them, tase them nor did Defendant Browning attempt to stop them from assaulting Plaintiff in any way. Defendant Browning only intervened when he noticed another officer (Tarr) was aware that an altercation was occuring, at which point Plaintiff had been hit with a lock numerous times and severly stabbed. Defendant Browning intervened by stating "Alright stop", he then allowed one of the unknown inmates who stabbed    to rise from Plaintiff at which both of the unknown attackers fleed as he allowed the unknown attack to flee, he called a bogus signal to the opposite side of the prison from where the incident occured (Exhibits:          ). As officer Tarr was running toward the place of the incident Officer Tarr noticed other officers responding in the opposite direction at which point he began to yell and flag down the officers saying "Right here" at that point Officer Tarr then corrected the bogus signal (not Defendant Browning). After Officer Tarr notice and comment on the severity of the wounds the Plaintiff had suffered only then did Defendant Browning call a (medical) signal to the correct place of incident but due to Defendant Browning's deliberate actions (failing to intervene, bogus signal) Plaintiff was left bleeding profusely from his mouth and a facial wound without any medical assistance responding due to the confusion of the locations (which Defendant Nurse Makayla Wills explained to Plaintiff as he arrived to South OSB infirmary).

5. In attempts to cover-up unconstitutional activity (Excessive Force, Failure to Intervene, Retaliation, Threat to Safety, Failure to Protect) Defendants Browning, Angeles-Mora, Yarber and Hiatt all falsified state documents in regards to the stabbing incident and bogus signal called by Defendant Browning explained in paragraphs 3 and 4 (Exhibits     ,     ,    )

6. Shortly after Officer Tarr corrected the signal Defendant Browning bogusly called Defendants Angeles-Mora and Leffler arrived cuffed Plaintiff while he continued to bleed profusely and escorted him to South OSB infirmary. While being escorted Defendant Leffler (who had been targeting Plaintiff) began to make jokes about the Plaintiff's injuries, laugh while stating "that didn't take long"; "that the unknown inmates had 'got Plaintiff good' and that that was for 'putting all them grievances in on him'" (Exhibits:     ,    ,    ,    ,    )

③

7. After arriving to South OSB infirmary Defendant Nurse Willis explained to Plaintiff why medical did not respond to the incident he was involved in (as mentioned in the last sentences in Paragraph 4). Defendant Nurse Willis then wrapped Plaintiff's outter wound with guaze and applied pressure to it. Defendant Leffler continued to joke about Plaintiff's injuries as well as comment on grievances Plaintiff filed to nurses and other officers. Defendant Leffler then asked Defendant Nurse Willis to allow him to apply pressure to the wound while telling the Plaintiff "you don't want me to do it" implying he would cause Plaintiff pain (Exhibits:    ,    )

8. Defendant Nurse Willis then gave Plaintiff a tetanus shot then along with Defendant Doctor Samuel Byrd applied (poorly done) stitches to the outter wound. Never did the outter wound cease to bleed (even after the stitches) and prior to it being numb and stitched it was never cleaned. Plaintiff continued to bleed profusely from a wound inside his mouth while being stitched, after Defendants Nurse Willis and Doctor Byrd finished the stitches Plaintiff informed and showed them the source of the blood while continuing to spit up large amounts of blood (Exhibit    ) at which point he was refused further treatment when Defendant Doctor Byrd said that "it should heal on its own" (Exhibits    ,    )

9. Plaintiff noticed that as Defendant Leffler talked about grievances Plaintiff submitted (which was the entire time Plaintiff was in South OSB infirmary) the amount of medical he received was more inadequate. Defendant Leffler also told medical to "hurry" so that he and Defendant Angeles-Mora could get Plaintiff back to his cell before chow, while Plaintiff still bled profusely from each wound. As Defendants Leffler and Angeles-Mora escorted Plaintiff back to his cell Plaintiff felt something dripping from his face like water (profusely) at which point he asked (due to it also raining) was his injuries still bleeding at which point Defendant Leffler responded "Duh", as Plaintiff look down and seen it (blood) dripping and filling his mouth which forced him to spit he asked would be receiving a shower to decontaminate and was also denied. Plaintiff was then placed back in his cell still bleeding, covered in blood, in pain with his face massively swollen (Exhibits:    ,    ,    ,    ,    ,    ,    ,    )

10. As Plaintiff was placed back in his cell by Defendants Leffler and Angeles-Mora he looked into the mirror and witnessed the outter wound was poorly stitched and still bleeding as was the wound inside his mouth. As Plaintiff continued to bleed from each wound he began to feel dizzy and lightheaded after failed attempts to control the bleeding and expressing to his cellmate Dontez Bryant(#261968) about his dizziness and lightheadedness Plaintiff's cellmate (Dontez Bryant #261968) had became concerned and asked Plaintiff if he wanted him (Dontez Bryant #261968) to alert officers in attempts to seek further medical attention which Plaintiff agreed was best to do. Plaintiff's cellmate (Dontez Bryant #261968) then began to yell for the officer who was assigned to FHU (Defendant Officer Tomas). Defendant Tomas came to their cell at which point Dontez Bryant (#261968)(Plaintiff's cellmate) instructed her to "look at the Plaintiff" stating also "He needs medical attention". Defendant Tomas looked into the cell and witnessed blood running from the Plaintiff's face and mouth as he was leaning over the sink/toilet while blood leaked into the sink, filled the toilet bowl and splattered across the floor. Defendant Tomas then stated "there's nothing I could do he was already cleared by medical". Plaintiff's cellmate (Dontez Bryant #261968) then asked Defendant Tomas for a Sargent, Defendant Tomas then stated "The Sargent's not coming up here, the doctor already cleared him, he was fine when he came back" then walked away as Defendant Tomas looked into the cell the first time. Plaintiff was already showing signs of being unstable while he was bleeding profusely which still was occurring but Plaintiff increased signs of unstableness and began to fade out of consciousness at which point    Plaintiff's cellmate began to yell for a Sargent after receiving no assistance or response from his shouts he began to kick the door. Defendant Tomas returned to the cell door placed a lock on the cell door and informed Plaintiff's cellmate (Dontez Bryant #261968) if he continued to yell for a Sargent and kick the door she'd write him up, and walked away. Plaintiff soon after fell hit his head, and became unconscious. Plaintiff's cellmate then began to kick the door and yell for help and caught the attention of Defendant Browning and asked him to come witness what was occurring with the Plaintiff being unconscious while still bleeding profusely. Defendant Browning then came up the stairs to the cell door looked inside while Defendant Tomas stood by his side at which point Defendant Tomas informed Defendant Browning "He came back from being cleared by medical" resulting to Defendant Browning also refusing to call for medical assistance. Plaintiff's cellmate (Dontez Bryant #261968) then called #-8-0 (prison tipline) and alerted them of the medical

(4)

emergency response that "someone would be there shortly". Soon after placing the #60 (tipline) call Defendant Angeles-Mora came rushing in the cellhouse then to the Plaintiffs and his cellmates door. After seeing the Plaintiffs condition (unconscious, bleeding from face and mouth) he immediately called for medical assistance. Plaintiff's cellmate was then cuffed and escorted out the cell and Plaintiff was then attended to by (non-medical) Defendants Browning and Angeles-Mora, and Officer Kolarick (not a defendant). Plaintiff gained consciousness with the trio grabbing and shaking him attempting to cuff him with also, Defendant Browning shaking a can of mace saying 'not to fight back' and Officer Kolarick saying 'we're here to help'. Plaintiff was then escorted from his cell to the FHU med-room (Exhibits , , , , , ,)

11. As Plaintiff arrived to FHU med-room where he was met by Nurse Valerie who after noticing Plaintiff's condition and becoming aware that Plaintiff had lost consciousness called South OSB and urged them to further treat Plaintiff stating on that call "Well he needs to be looked at because he is not okay now." Plaintiff was then wheelchaired to South OSB (Exhibits , ,)

12. Upon the Plaintiffs arrival back to South OSB infirmary and Defendants Doctor Samauel Byrd, Nurse Makayla Willis, and Health Service Administrator Bedwell witnessed large amounts of blood coming from Plaintiffs poorly stitched wound and mouth. Defedant Nurse Willis was instructed to start an IV (due to loss of blood and loss of consciousness), remove the poorly done stitches (which Plaintiff attempted to refuse), re-wrap the outter wound (which continued to bleed profusely), and stuff guaze in mouth for inner wound (which also continued to bleed profusely). Plaintiff was then informed he would be going to the hospital, the ambulance was called, Plaintiff was rushed to Terre Haute Regional hospital with lights and sirens and admitted to the trauma unit. (Exhibits: , , , , ,)

13. Plaintiff received stitches inside the wound as well as some to close the wound. Doctors and nurse at Terre Haute Regional hospital discovered a 2 cetermeter wound inside Plaintiff's mouth and controlled the bleeding by clotting it. They then explained to the Plaintiff that the bleeding had stopped and that they could apply stitches to the wound if Plaintiff wanted due to the excruciating pain of getting stitches but if removed then put in again since the bleeding had stopped Plaintiff declined the offer. (Exhibits , , , ). Plaintiff received facial disfigurement from the stabbing and massive swelling from being hit with a lock.

14. Plaintiff then grieved the incident in which he was stabbed (Exhibit D) and shortly after received a grievance response from (Defendant Lieutenant Leffler's friend and co-lieutenant) Defendant Lieutenant Richard Yarber (who is also the SHU's former lieutenant but was removed from the SHU due to corruption)(Exhibit D(2). The grievance response stated Lieutenant Leffler's statement "That didn't take long" was not derogatory but was one of concern and that Browning's actions were a mistake, despite Defendant Yarber not being present and despite the actions, behavior and comments of both (Defendants) Leffler and Browning explained in the foregoing paragraphs 1, 4, 6, 7 and 9. This shows the willingness that Wabash Valley prison officials have to do whatever is needed to cover-up what occured with the Plaintiff and protect each other despite being corrupt.

15. After being on cell confinement for about 20 days due to being written-up for the incident he was attacked in (Exhibit ) despite the officer (Defendant Browning) witnessing the altercation explained in paragraphs 3 and 4 and knowing Plaintiff was a victim to an assault (Exhibit ) on 11-14-24 Plaintiff was informed by prison officials that he was no longer on cell confinement due to dismissed/not guilty verdict on the battery conduct (Exhibit ). The next day around lunch (11-15-24 around/about 11:30am) an officer came to Plaintiff's cell and placed a lock on the cuffport for cell confinement. Plaintiff questioned the officer about why and was told that higher ups called and said to ensure Plaintiff was back on cell confinement status. Plaintiff then requested a sargent who informed him he was on cell confinement pending an investigation and was then told "You know what this is about" but when Plaintiff questioned what was it about they told him "We told you all we could". Confused and believing it was an act of retaliation

of some form. Plaintiff then called (#66) the prison emergency/tip line and informed Office of Internal Investigators Allen that he had been placed back on cell confinement for no apparent reason after being taken off a day prior and would like to know the reason. Investigator Allen asked Plaintiff his name at which point Plaintiff gave his last name and bed location. Defendant Investigator Allen did not inform Plaintiff that his office had received information about threats to Plaintiff's safety but instead asked if Plaintiff receiving threats which Plaintiff responded "no" due to not receiving any threats other than threats prior to being released from the SHU and prior to being stabbed. Defendant Investigator Allen then asked Plaintiff if he felt threatened due to his unawareness to threats other than officers threatening to get him off camera and "fuck him up" he said "no". Plaintiff was then asked would he be willing to sign a Protective Custody waiver he said he would due to not receiving recent threats in general population which he did with his counselor that day, he was then removed from cell confinement status (Exhibit

16. On 11-20-24 while housed in FHU/F-Dorm Plaintiff was released to the north yard for outside recreation after about 5 minutes Plaintiff was then approached by Defendant Lieutenant Richard Yarber along with 4 other officers. As they approached Plaintiff one of the officers with Defendant Yarber said "this is Reynolds right here." Defendant Yarber then said to Plaintiff Reynolds come with us." When asked "why" Plaintiff was told that they received a call from Office of Internal Investigators saying to search you, you had a weapon" Plaintiff then attempted to submit to a pat search and was told by Defendant Yarber "we have to strip search you" Plaintiff was then ushered towards his cellhouse (FHU/F-Dorm) by an officer that was with Defendant Yarber when Defendant Yarber then said "Lets take him to G-Retherm" a cellhouse that was not the Plaintiffs and an area that had cords coming from the ceiling where cameras were suppose to be located. As Plaintiff was ushered into GHU/G-Dorm retherm Defendant Yarber instructed Plaintiff to enter, once Plaintiff entered Defendant Yarber pointed a taser at the Plaintiff and began to threaten to tase him while yelling "Dont move" and "where is it" in attempts to justify an assault or force used on Plaintiff. Plaintiff was then told by Defendant Yarber "dont move again or ima tase your ass", Plaintiff then raised his hands turned around and looked towards Defendant Yarber as he asked "what are y'all on" meaning what were they planning Plaintiff was then told to look away, a officer (Dugger) then pat searched him after pat searching Plaintiff the officer (Dugger) knelt and look under the retherm sink and pulled a sharp metal object from under it. As Plaintiff denied it was his asked to have the cameras reviewed, and requested the presence of a superior officer Defendant Yarber then said "its yours IA know whats going on too." At this point is where the Plaintiff notice cords hanging from where cameras were suppose to be. Believing there was cameras in the GHU corridor leading to the retherm Plaintiff asked was the retherm searched prior to bringing him there (due to this being an area other inmates had access to, who were workers) and was told "we know this came from your person and this is what the report will say". Plaintiff then again requested a superior due to the corrupt actions of the officers present and was refused. Defendant Yarber then told Plaintiff to "strip out" Plaintiff refused stating he would not strip-out until a superior come. Defendant Yarber then sexually threaten Plaintiff stating "If you dont strip yourself Im going to take your clothes off for you and trust me its gone get weird". Plaintiff was left no choice but to submit to the strip search fearing what Defendant Yarber would do based on the actions already displayed and there being no working camera present. Defendant Yarber also made comments about the situation where Plaintiff was stabbed saying "we know whats going on you just put in a grievance". Plaintiff was then escorted to the SHU and placed in cell A-1005 pending conduct for possession of a weapon (Exhibits

17. Once back in the SHU Plaintiff became aware of rumors that Defendant Lieutenant Leffler was spreading rumors to inmates and other officers that he was a snitch (for filing grievances) in attempts to have inmates harm him and officers intimidate and harass him as well. Some officer even threatened to take Plaintiff off camera and fuck him up, and Plaintiff also received information that Defendant Leffler and Defendant Browning encouraged inmates to further assault Plaintiff by throwing boiling hot water on him and fecal matter, and that Defendants Leffler and Browning had a personal involvement in the incident where Plaintiff was stabbed. (Exhibits

18. Placed back on the SHU Plaintiff was there again subjected to multiple forms of retaliation (false conducts, withholding/misplacement of mail, misplacement of laundry, refusal to issue laundry, violation of due process by Defendant Wadhayson of DHB) by multiple different prison personel. Plaintiff was retaliated upon for filing grievances and helping other file grievances and was moved to a different part of the prison where there were lots of mice, birds (Exhibits  ,  ,  ) by Defendant Caseworker Ashley Moseley (Exhibits

19. After being attacked, threatened by prison personel, and learning that prison personel and inmates were working together to ensure the Plaintiff was harmed and that it was a $5000 hit on the Plaintiff he then wrote his counselor (Moody, Wright, Moseley, and Mallot), UTM Meeks, Micheal Ellis, Frank Vanihel (Warden), and OII Vanleet multiple times explaining issues with safety and requesting an immediate transfer. After receiving no responses after writing each multiple times he submitted a grievance explaining this (Exhibit  ) which was sent to the very person (Defendant Leffler) Plaintiff was having an issue with, and was also told to write unit team (Exhibit  ) Plaintiff appealed the grievance explaining that this grievances was due to not getting response from Defendants Vanleet (OII), Frank Vanihel (Warden), Meeks (UTM) and counselors (Moseley, Moody, Mallot, Wright (all defendants except Wright)) (Exhibit  ) and thereafter received a response saying to write counselor from Defendant Ast. Warden Michael Ellis (Exhibit  ). Plaintiff then filed 2 classifacation appeals (Exhibits  ) which were responded by Defendant Deputy Warden K. Fischer. (Exhibits

20. Due to the seriousness of the issue and not receiving assistance from anyone inside the facility Plaintiff's mother Consuela Reynolds began to submit grievance emails to the Obudsman and call the facility (WVCF) in attempts to ensure Plaintiff's safety through a transfer but was also given the run around she then emailed the Indiana Goverment Center seeking help and an investigation.

## VII. CAUSE OF ACTION/VIOLATIONS

1. Count I, Retaliation claim, 1st Amendment was violated by Defendant Lieutenant Leffler when he retaliated against the Plaintiff for filing grievances by threatening, intimidating, harassing him. Defendant Leffler also told inmates and correctional officers that Plaintiff was a snitch and encouraged them to harm him for filing legitimate grievances about SHU conditions (mold, contaminated water, staff misconduct), and also destroyed legal papers (Exhibits

2. Count II, Threat to Safety claim, 8th Amendment was violated by Defendant Leffler when he deliberate indifferently called Plaintiff a snitch in front of other inmates posing a major risk and serious his safety (Exhibits

3. Count III, Excessive Force claim, 8th Amendment was violated by Leffler when he deliberate indifferently called Plaintiff a snitch in front of other officers, inmates and encouraged officers to encourage inmates to harm Plaintiff posing a major risk and serious threat to his safety through malicious and sadistic use of force leading to Plaintiff sustaining a stabbing injury (Exhibits

4. Count IV, Failure to Protect claim, 8th Amendment was violated by Defendant Leffler when he knew of and created a major risk of serious harm by calling Plaintiff a snitch in front of other inmates and officers, encouraging officers to encourage inmates to stab Plaintiff which he failed to respond to in a reasonable manner (Exhibits

⑦

5. Count **V**, Failure to Protect claim, 8th Amendment was violated by Defendant Frank Vanihal (who is the warden and in a position to protect inmates) when he disregarded an excessive risk to Plaintiff's safety after Plaintiff personally wrote him and informed him of threats from officers, which lead to continuous harassment and threats, officers encouraging inmates to attack Plaintiff, Plaintiff being stabbed, false conducts, and various forms of retaliations as explained in Paragraphs ___ of VI. Statement of facts section. (Exhibits

6. Count **VI**, Failure to Intervene claim, 8th Amendment was violated by Defendant Browning due to him failing to intervene when an inmate attack Plaintiff with a weapon when he was in position to due as he was the officer supervising the area the incident occured and witnessed the attack as explained in VI. Statement of facts Paragraph 4 (Exhibits

7. Count **VII**, Failure to Protect claim, 8th Amendment was violated by Defendant Allen Vanleer when he had receive various forms of information (grievances, threatening kites, through his investigations, tipline) as well as common sense, staff information that Plaintiff was being targeted by inmates and staff and substantial risks to Plaintiff's safety through acts of harm was present and failed to protect Plaintiff from forseeable violence. (Exhibits

8. Count **VIII**, Deliberate Indifference to Serious Medical Needs claim, 8th Amendment was violated by Defendants Nurse Makayla Willis, Doctor Samuel Byrd, Health Service Administrator Bedwell, Lieutenant Leffler, Sargent Angeles-Mora, and Officer Tomas due to them all either failing to provide adequate medical care or request it after Plaintiff received a facial stabbing wound that Defendants witnessed continue to bleed profusely. (Exhibits

9. Count **IX**, Deliberate Indifference to Serious Medical Needs claim, 8th Amendment was violated by Defendants Officer Tomas and Officer Browning when they both noticed Plaintiff unconscious and bleeding profusely on his cell floor and did not provide any medical care. (Exhibits

10. Count **X**, False Documents/Cover-Up claim, 8th Amendment was violated by Defendants Yarber, Hiatt, Angelees, and Browning when each of them made a false statement on a state form in attempts to cover up Defendant Browning's unconstitution act of calling a bogus signal to create a diverson while the Plaintiff was being attacked with weapons by unknown individuals (Exhibits

11. Count **XI**, Cruel and Unusual Punishment claim, 8th Amendment was violated by Defendant Yarber when he conspired with officers he was superior to to plant a weapon and ordered those officers to make false reports for a disciplinary conduct subjecting the Plaintiff to a wrongful disciplinary conviction, segregation time, loss of good time subjected him to retaliation and inhumane conditions (mold, sewage/plumbing issues, mice, contaminated water, birds and officer misconduct). (Exhibits

12. Count **XII**, Retaliation claim, 1st Amendment was violated by Defendant Yarber when he conspired with officers he was superior to to plant a weapon and ordered those officers to make false reports for a disciplinary conduct subjecting the Plaintiff to a wrongful disciplinary conviction, segregation time, loss of good time and inhumane conditions in the 'Secure Control Unit' for filing legit grievance about prison conditions. (Exhibits

(8)

13. Count **XIII**, False Documents/Cover-Up claim, 8th Amendment was violated by Defendants Yarber, Dugger, Pickett and Payne when they all conspired to plant a weapon against Plaintiff and followed the instructions of Defendant Yarber when he ordered them to make false reports to support a false disciplinary charge on the Plaintiff after a weapon was found in the area that these same officer intentionally brought Plaintiff to. (Exhibits

14. Count **XIV**, Due Process claim, 14th Amendment was violated by Defendants Ellis, Wadhwan, Reasoner, and Reagle when they all allowed Plaintiff's rights to be violated during the disciplinary hearing, appeal at facility level, and at the final reviewing authority for disciplinary, after Plaintiff was found guilty, denied appeal at facility level and the final reviewing board and presented multiple violations to his rights after he was charge with a false conduct. (Exhibits

15. Count **XV**, False Documents/Cover-Up claim, 8th Amendment was violated by Defendant Moseley when she conducted a false conduct report stating that Plaintiff created a falsified document after he assisted an unable inmate with the preparation of an grievance. (Exhibits

16. Count **XVI**, Retaliation claim, 1st Amendment was violated by Defendant Moseley when she withheld mail for nearly two weeks and moved me to a part of the secure control unit that was infested with mice as a form of punishment, after Plaintiff filed grievances on her due to failing to mitigate complaint about conditions of confinement when Plaintiff did not have any running water in his cell for nearly two weeks. (Exhibits

17. Count **XVII**, Right to Access Courts, 1st Amendment was violated by Defendants Moseley and Mallot when they withheld Plaintiff's mail, grievances, and requests forms for nearly two weeks after Plaintiff filed grievances about Secure Control Units conditions they also withheld mail that was in regards to disciplinary hearing conduct report resulting in Plaintiff not be able to properly defend his at disciplinary hearing (Exhibits

18. Count **XVIII**, Due Process claim, 14th Amendment was violated by Defendants Moseley and Mallot when they withheld charging information for a disciplinary hearing which was a right of Plaintiffs to have prior to the disciplinary hearing due to Defendants Moseley and Mallot withholding mail which contained disciplinary paperwork Plaintiff was not able to properly defend himself nor call witnesses or cross examine which lead to a guilty decision. (Exhibits

19. Count **XIX**, Cruel and Unusual Punishment claim, 8th Amendment was violated by Defendant Gilstrap after Plaintiff turned in laundry and it did not return he informed officers who conducted a search of his cell inform Defendant Gilstrap along with Plaintiff personally informing him that he did not have adequate clothing and no way to wash whites and he was a Muslim

9

and need to have clean clothing in order to perform religious duties. Defendant Gilstrap did not respond and blantly refused to provide clean whites or a laundry bag to wash the set he had. (Exhibits

20. Count **XX**, Free Exercise of Religion claim, 1st Amendment was violated by Defendant Gilstrap and Leffler after informing them through request form denying Plaintiff clean clothing or a way to clean clothing after Plaintiff informed he was Muslim, was laundry when it did not return to his cell and he needed clean clothing to perform religious duties. (Exhibits

21. Count **XXI**, Cruel and Unusual Punishment claim, 8th Amendment was violated by Defendants Leffler and Browning when they both conspired in getting the Plaintiff harmed by encouraging inmates to throw boiling water and fecal matter on him creating an substantial risk of serious damage to Plaintiff's health. (Exhibits

22. Count **XXII**, Threat to Safety claim, 8th Amendment was violated by Defendants Leffler and Browning when they both conspired in getting the Plaintiff harmed by encouraging inmates to throw boiling water and fecal matter on him therefore they both created and were aware of a threat of serious harm and injury to Plaintiff and failed to act/acted with deliberate indifference. (Exhibits

23. Count **XXIII**, Cruel and Unusual Punishment claim, 8th Amendment was violated by Defendant Tomas after she multiple times poisoned/contaminated food while serving trays to Plaintiff after he filed a grievance on her. (Exhibits

24. Count **XXIV**, Retaliation claim, 1st Amendment was violated by Defendant Tomas and Browning after they conspired with Defendant Leffler to retaliate against Plaintiff after filing grievances on them all by intimidating him, taunting him, encouraging inmates to harm him, poisioning and contaminating food. (Exhibits

25. Count **XXV**, Threat to Safety claim, 8th Amendment was violated by Defendants Moseley, Mallot, Moody, Meeks, Leffler, Ellis, Vanihel, Vanleet and Fischer after Plaintiff inform the all of the serious threats to his safety and health and they all failed to act accordingly or did not respond at all showing deliberate indifference when Plaintiff wrote them of the issues he was experiencing while requesting a transfer. (Exhibits

### VIII. ARGUEMENT

1. In regards to CAUSE OF ACTION/VIOLATIONS; Count **I**, Retaliation 1st Amendment. Plaintiff engaged in a "act protected by the 1st Amendment" which was filing a grievance due to the conditions of confinement Secure Control Unit. Defendant Leffler then began to harrass, intimidate, and threaten Plaintiff all actions that would deter a person of "ordinary firmness" from engaging in the act of filing grievance. Due to the grievance issue being in relation to liability of Defendant Leffler it was the "motivating factor in the defendants decision to take those actions". Bridges v. Gilbert, 557 F.3d 541, 546 (7th Cir. 2009)

2. In regards to CAUSE OF ACTION/VIOLATIONS; Count **II**, Threat to Safety claim, 8th Amendment. Defendant Leffler was aware of a "substantial risk of harm" to the Plaintiff because he created the risk of harm and therefore consciously disregarded that risk

when he called Plaintiff a snitch in front of other inmates. Farmer v. Brennan, 511 U.S. 825, 828, 114 S. Ct. 1970, 128 L. Ed 2d 811 (1994). "Its common knowledge that snitches face unique risks in prison". Dale v. Poston, 548 F.3d 563, 570 (7th Cir. 2008). Therefor Defendant Lefflers "conscious disregard involves intentional or reckless conduct, not mere negligence". Berry v. Peterman, 604 F.3d 435, 440 (7th Cir. 2010).

3. In regards to CAUSE OF ACTION/VIOLATIONS; Count III, Excessive Force claim, 8th Amendment. The "core requirement" for an excessive force claim is that "the defendant used force not in good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm." Defendant Lefflers actions of encouraging inmates to harm Plaintiff and encouraging officers to encourage inmates to harm Plaintiff was "for the very purpose of causing harm". Hendrickson v. Cooper, 589 F.3d 887, 890 (7th Cir. 2009)

4. In regards to CAUSE OF ACTION/VIOLATIONS; Count IV, Failure to Protect claim, 8th Amendment. When Defendant Leffler called Plaintiff a snitch in front of other inmates and encouraged harm against the Plaintiff through inmates and officer he created and "had knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendants failure to prevent it" Santiago v. Walls, 599 F.3d 749, 756 (7th Cir. 2010)

5. In regards to CAUSE OF ACTION/VIOLATIONS; Count V, Failure to Protect claim, 8th Amendment." Defendant Vanihel was notified by the Plaintiff on multiple occasions that he was being retaliated upon for filing a grievance about conditions of confinement. When officers came to his door and threatened to take him off camera and "fuck him up" stemming from Defendant Lefflers actions of encouraging harm against Plaintiff. Defendant Vanihel "had knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendants failure to prevent it" Santiago v. Walls, 599 F.3d 749, 756 (7th Cir. 2010).

6. In regards to CAUSE OF ACTION/VIOLATIONS; Count VI, Failure to Intervene, 8th Amendment. Defendant Browning was "in a position to intervene but failed to do so" Ledlow v. Givens, 500 F. App'x 910, 914 (11th Cir. 2012). Defendant Browning allowed inmates armed to attack plaintiff without ordering them to stop then tapping one on his back saying "Alright stop that's enough" and allowed them to flee while calling a bogus "signal" to a different location of the prison. Defendant Browning did not intervene until after Plaintiff was stabbed. Defendant Browning "could have anticipated and stopped the attack". Hadley v. Gutierrez, 526 F.3d 1324.

7. In regards to CAUSE OF ACTION/VIOLATIONS; Count VII, Failure to Protect claim, 8th Amendment. Defendants Allen and Vanleet received various forms of information (grievances, threatening letters, investigations, tipline) as well as staff information and common sense that Plaintiff was being subjected to harras, intimidation and retaliation from officers and harm from inmates who had been encouraged by officers. These "prison official had a duty to protect prisoners from violence at the hands of other prisoners" and officers as well. Cortes-Quinones v. Jimenez-Nettleship, 842 F.2d 556, [****1 6]

8. In regards to CAUSE OF ACTION/VIOLATIONS; Count VIII Deliberate Indifference to Serious Medical Needs claim. Defendants Nurse Willis, Doctor Byrd, HSA Bedwell, Leffler, Angeles-Mora, and Officer Tomas all witnessed Plaintiff bleeding profusely after being stabbed and failed to further treat him and/or call for medical assistance leading

⑪

to Plaintiff losing large amounts of blood after bleeding profusely for an hour and a half from a knife wound to his face and mouth this wound was a serious medical need so obvious that a lay person would easily recognize the necessity for a doctors attention. Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003). Defendants not treating Plaintiff led to him losing consciousness and falling and hitting his head. Defendants had subjective knowledge of the risk of serious harm, disregarded that risk, and by conduct that was more than mere negligence. Brown, 387 F.3d at 1351. After Defendants Bryd and Willis stitched Plaintiffs wound and refused to stitch the other, the wound continued to bleed profusely through the poorly done stitches therefore the care given was so cursory as to amount to no treatment at all. Ancata v. Prison Health Servs., Inc., 769 F.2d 700, 704 (11th Cir. 1985)

9. In regards to CAUSE OF ACTION/VIOLATIONS; Count **IX**, Deliberate Indifference to Serious Medical Needs claim, 8th Amendment. Defendants Browning and Tomas witnessed Plaintiff on the ground bleeding profusely and unconscious and refused to call for medical assistance. Defendant Tomas detered Defendant Browning stating 'he just came back from medical' or in other words didn't need medical at that moment Plaintiff was bleeding profusely and unconscious on the ground. This serious medical need was 'an injury that a reasonable doctor or patient would find important and worthy of comment or treatment, the presence of medical conditions that significantly affects an individuals daily activities; or the existence of chronic and substantial pain.' Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000)

10. In regards to CAUSE OF ACTION/VIOLATIONS; Count **X**, False Documents/Cover-Up Claim, 8th Amendment. Defendants Browning, Yarber, Hiatt and Angelees-Mora falsified state documents and reports to cover-up malicious, sadistic actions of Defendant Browning calling a bogus signal to a location that was on the opposite side of the prison during an incident when the Plaintiff was being attacked by two inmates armed with weapons making them liable for that malicious, sadistic action as well.

11. In regards to CAUSE OF ACTION/VIOLATIONS; Count **XI**, Cruel and Unusual Punishment claim, 8th Amendment. Defendant Yarber planted a knife on Plaintiff, made false reports which resulted to Plaintiff receiving disciplinary sanctions for this false disciplinary report.

12. In regards to CAUSE OF ACTION/VIOLATIONS; Count **XII**, Retaliation claim, 1st Amendment. Plaintiff filed a grievance on Defendant Leffler after he showed retalitive behaviors due to Plaintiff filing a grievance about the conditions of confinement where he was being housed. Plaintiff engaged in an activity protected by the 1st Amendment, through Defendant Yarbers actions of planting a knife on plaintiff for filing grievances on his friend and co-lieutenant (Leffler) Plaintiff suffered a deprivation that would likely deter 1st Amendment activity in the future which was harassment, threatening, improper sanctions due to false conduct reports. The motivating factor was that Plaintiff filed grievances and this was Defendant Yarbers reason in his decision to take the retaliatory action. Bridges v. Gilbert, 557 F.3d 541, 546 (7th Cir. 2009).

13. In regards to CAUSE OF ACTION/VIOLATIONS; Count **XIII**, False Documents/Cover Up claim, 8th Amendment. Defendants Dugger, Yarber, Pickett, and Payne conspired to plant a weapon against Plaintiff and wrote false reports to pin him with disciplinary charges after he was brought to a location intentionally where the knife was found making them liable for the unconstitutional act of planting the knife due to the false documents and statement they made to cover it up.

14. In regards to CAUSE OF ACTION/VIOLATIONS; Count **XIV**, Due Process Claim, 14th Amendment. Plaintiff presented clear evidence to Defendants Wadhawan, Ellis, and Reasoner also Defendant Reagle the Commissioner of the IDOC (supervisor), yet they all failed to remedy the situation after Plaintiff rights were violated when he was improperly charged with a disciplinary infraction that was supported by false reports by retalitory actions of other Defendants in this action that targeted him. Plaintiff did not receive an advance written notice of the disciplinary charges prior to the hearing. He also was refused evidence for his defense, written statements when he attempted to call witnesses, and an impartial decision maker due to the Disciplinary Hearing Officer violating multiple rights yet still finding Plaintiff guilty. Wolff, 418 U.S. at 563-70

15. In regards to CAUSE OF ACTION/VIOLATIONS; Count **XV**, False Documents/Cover Up claim, 8th Amendment. Plaintiff wrote a grievance appeal and also assisted another individual with a grievance appeal Defendant Moseley wrote a disciplinary report stating that Plaintiff created Falsified Documents and in a statement said that she did not witness who created the document as a result of the disciplinary report Defendant Moseley confiscated legit grievance documents and withheld Plaintiff's mail for nearly two weeks.

16. In regards to CAUSE OF ACTION/VIOLATIONS; Count **XVI**, Retaliation claim, 1st Amendment. Plaintiff filed a grievance on Defendant Moseley for being aware of inhumane conditions and failing to move Plaintiff to a cell with running water. This was an act protected by the 1st Amendment. Defendant Moseley then refused to respond to request forms while she was Plaintiff caseworker, charged Plaintiff with a false conduct report and as a form of punishment moved Plaintiff to a mice infested part of the prison. Defendant Moseley also withheld Plaintiff's mail for two week blocking his access to the courts. The "motivating factor" was that the Plaintiff exercised his 1st Amendment right to complain about inhumane conditions. Bridges v. Gilbert, 557 F.3d 541, 546 (7th Cir. 2009).

17. In regards to CAUSE OF ACTION/VIOLATIONS; Count **XVII**, Right to Access Courts claim, 1st Amendment. Defendants Moseley and Mallot were Plaintiffs caseworkers and after Plaintiff filed grievances both withheld mail for 2 weeks the right of the Plaintiff to send and receive mail is clearly established. Thornburgh v. Abbott, 490 U.S. 401, 407, 109 S. Ct. 1874, 104 L. Ed. 2d 459 (1989).

18. In regards to CAUSE OF ACTION/VIOLATIONS; Count **XVIII**, Due Process claim, 14th Amendment. Defendants Moseley and Mallot withheld Plaintiffs mail for two weeks to block access to filing grievances and communication with the Disciplinary

⑬

Hearing regard resulting to many other rights being violated. Never did Plaintiff receive a notice that his incoming mail was being withheld." Frost v. Symington, 197 F.3d 348, 353-54 (9th Cir. 1999).

19. In regards to CAUSE OF ACTION/VIOLATIONS; Count **XIX**, Cruel and Unusual Punishment claim, 8th Amendment. Plaintiff is a muslim and is required to pray 5 times a day in a state of purity in Allah's Eyes, in a clean setting, and in clean clothing. Plaintiff informed Defendant Gilstrap through clothing request and request forms he had turned in all his laundry and it did not return, he has been wearing the same clothing for nearly a week after complaining to CO's and them failing to find laundry or bring clothing. He was informed that Plaintiff was a muslim and that the issues with his clothing was hindering religious duties. Defendant Gilstrap refused to issue Plaintiff clothing even after CO's asked him to after conducting a search of Plaintiff's cell seeing he had none, due to Plaintiff filing a grievance about the issue." The 8th Amendments prohibition against cruel and unusual punishment does, requires that prisoners be afforded "humane conditions of confinement" and prison officials are to ensure that inmates receive adequate food, shelter, clothing, and medical care." Herman v. Holiday, 238 F.3d 660, 664 (5th Cir. 2001).

20. In regards to CAUSE OF ACTION/VIOLATIONS; Count **XX**, Free Exercise of Religion claim, 1st Amendment. Plaintiff suffered physical injury (disbelief) due to Defendants Leffler and Gilstrap refusing to provide clean clothing and Plaintiff's laundry did not return to his cell forcing him to wear the same clothes for over a week which hindered his ability to perform religious duties which he continued to inform them of. The "actual/imminent harm" was disbelief due to multiple missed prayers. Lewis v. Casey, 518 U.S. 343, 350, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996).

21. In regards to CAUSE OF ACTION/VIOLATIONS; Count **XXI**, Cruel and Unusual Punishment claim, 8th Amendment. Defendant's Brown -ing and Leffler encouraged inmates to harm Plaintiff and by doing so "deprived him life's necessities" which was his safety, and was "deliberately indifferent to Plaintiff's safety" which is an obligation of theirs to ensure. When there is a known risk which they themselves created therefore it was obvious. Spencer, 449 F.3d at 729.

22. In regards to CAUSE OF ACTION/VIOLATIONS; Count **XXII**, Threat to Safety claim, 8th Amendment. When Defendants Leffler and Browning encouraged the harm of Plaintiff through other inmates they created and were "aware of an excessive risk" to Plaintiff's safety and "disregarded it". Farmer v. Brennan, 511 U.S. at 837.

23. In regards to CAUSE OF ACTION/VIOLATIONS; Count **XXIII**, Cruel and Unusual Punishment claim. When Tomas contaminated and poisoned Plaintiff trays she knew of and disregarded an excessive risk to inmates safety." Farmer v. Brennan, 511 U.S. 825, 837.

24. In regards to CAUSE OF ACTION/VIOLATIONS; Count **XXIV** Retaliation claim, 1st Amendment. Plaintiff filed a grievance about condition of confinement and became a target of the Defendants they threatened, intimidated, poisoned food and encouraged inmates to harm Plaintiff for filing a grievance, a "right" secured by the 1st Amendment and was their "motivating factor to violate Plaintiff's rights.

Bridges v. Gilbert, 557 F.3d 541, 546 (7th Cir. 2009).

25. In regards to CAUSE OF ACTION/VIOLATIONS; Count **XXV**, Threat to Safety claim, 8th Amendment. Plaintiff wrote requests, filed grievances, submitted classification appeals, called tipline and had family call, informing defendants of a serious risk to his health and safety and they disregarded that risk. Defendants Moseley, Maliot, Moody, Meeks, Keffler, Ellis, Vanihel, Vanleet and Fischer all did not respond when Plaintiff informed them of the risk while requesting a transfer or gave him the run around, their conscious denial was more than mere negligence it was intentional or reckless conduct (Farmer v. Brennan, 511 U.S. 825, 828)(Berry v. Peterman, 604 F.3d 435, 440 (7th Cir. 2010).

## ~~IX~~ Prayer For Relief

WHEREFORE, Plaintiff respectfully prays that this court enters an order:

1. Issuing declaroty relief, declaring that the acts and omissions of the defendants have violated Plaintiff's rights.

2. Issuing injunctive relief commanding an immediate transfer to Indiana State Prison due to retalitive actions defendants have already shown for filing prior complaints and grievances, and fear of further retaliation for filing this complaint.

3. Awarding Plaintiff compensatory damages for the unnessecary injury, emotional, mental, physical, and spiritual suffering, in the amount of:
   As to Counts **I-IV**, $250,000 from the defendant in his official and individual capacity.
   As to Count **V**, $75,000 from the defendant in his official and individual capacity.
   As to Counts **VI-X, XXI-XXIV**, $75,000 from each defendant in their individual and official capacities.
   As to Counts **XI-XIV**, $75,000 from each defendant in their official and individual capacities.
   As to Counts **XV-XVIII**, $50,000 from each defendant in their official and individual capacities.
   As to Counts **XIX-XX**, $100,000 from each defendant in their official and individual capacities.
   As to Count **XXV**, $100,000 from each defendant in their official and individual capacities.

4. Awarding Plaintiff punitive damages for endangering plaintiff lack of consequences in doing so, ignoring protocol, and to deter those acting under color of state law from violating federal rights, in the amount of:
   As to Counts **I-IV**, $250,000 from the defendant in his official and individual capacity.
   As to Count **V**, $75,000 from the defendant in his official and individual capacity.
   As to Counts **VI-X, XXI-XXIV**, $75,000 from each defendant in their official and individual capacities.
   As to Counts **XI-XIV**, $75,000 from each defendant in their official and individual capacities.

As to Counts **XV-XVIII**, $50,000 from each defendant in their official and individual capacities.

As to Counts **XIX-XX**, $100,000 from each defendant in their official and individual capacities.

As to Count **XXV**, $100,000 from each defendant in their official and individual capacities.

5. Awarding plaintiff punitive damages ordering defendants to pay all Plaintiffs counseling fees and court costs to deter the willingness to disregard federal rights.

6. Awarding plaintiff any other relief that this court may deem just and proper.

## X. JURY DEMAND

1. Pursuant to Federal Rules of Civil Procedure, Rule 38(b). Plaintiff respectfully demands a trial by jury of all issues in this action.

I, Angelo Reynolds, hereby affirm, under the penalties of perjury, that the foregoing representations are true and correct to the best of my knowledge and belief.

Respectfully Submitted

#228386
Angelo Reynolds
Affiant/Plaintiff